IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN ZAVALA, § | |
|     Plaintiff, § | |
| § | |
| v. § | CASE NO. 1:21-CV-00082-DAE |
| § | |
| TEXAS LEHIGH CEMENT COMPANY § | |
| LP, LEHIGH HANSON, INC., and § | |
| EAGLE MATERIALS, INC., § | |
|     Defendants. § | |

**DEFENDANTS TEXAS LEHIGH CEMENT COMPANY, LP
AND EAGLE MATERIALS, INC.'S
RESPONSE TO PLAINTIFF'S MOTION FOR PARIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THE COURT:

Defendants, TEXAS LEHIGH CEMENT COMPANY, LP ("Texas Lehigh") and EAGLE MATERIALS, INC. ("Eagle Materials") (collectively, "Defendants") file this, their Response to Plaintiff, JOHN ZAVALA's ("Plaintiff" or "Zavala") Motion for Partial Summary Judgment pursuant to the Federal Rules of Civil Procedure and in support would show the Court as follows:

### I.     SUMMARY OF THE RESPONSE

1.     Plaintiff's Motion for Partial Summary Judgment should be denied in its entirety. First, Defendants have never and do not now contest that the loss of Plaintiff's left leg below the knee constitutes a "disability" under the ADA. Therefore, that issue is moot. Second, the extent to which Plaintiff mitigated his damages following his termination is a live issue—the Plaintiff himself could not testify with certainty whether he applied for more than one job during the 11-month period following his termination, creating a fact issue. Further, there is evidence that he could have obtained substantially equivalent employment in the industry during that same time

period, which further makes summary judgment on that affirmative defense improper. Third, the statutory deadlines for filing a charge of discrimination and for filing suit after receipt of a "right-to-sue" letter both apply to bar at least some of Plaintiff's claims, including any claims based on discrete acts of alleged discrimination prior to December 23, 2019 and all of Plaintiff's claims under the Texas Labor Code. Therefore, Plaintiff is not entitled to summary judgment on the issues of limitations and exhaustion of administrative remedies.

## II.   SUMMARY JUDGMENT EVIDENCE

2. In support of this Response, Defendants refer the Court to the pleadings on file, together with the following exhibits attached hereto and incorporated herein by reference as summary judgment evidence:

### Exhibits

**Exhibit A**: Plaintiff's Original Petition filed on 12/23/20

**Exhibit B**: Deposition of the Corporate Representative of Texas Lehigh, Plant Manager Natacha Lago, taken on 03/04/22

**Exhibit C**: Deposition of the Plaintiff, John Zavala, Part 1, taken on 02/24/22

**Exhibit C-1**: Patient Notes from Ritchie Limb and Brace, dated 10/16/18 (Zavala000094 – 82)

**Exhibit C-2**: Utility Supervisor/Foreman Job Descriptions (TLCC 000190 – 192)

**Exhibit C-3**: Email from John Zavala to Texas Lehigh Safety Director, Steve Adkins, dated 12/13/19 (TLCC 000090)

**Exhibit C-4**: Dr. Burrus's Return to Work Release, dated 12/17/19 (TLCC 000089)

**Exhibit C-5**: Concentra's Return to Work Release, dated 12/19/19 (TLCC 000331 – 334)

**Exhibit C-6**: Recording of December 23, 2019 meeting (Zavala002144)

**Exhibit C-7**: Texas Lehigh's Termination Report for John Zavala, dated 12/23/19 (TLCC 000096)

**Exhibit C-8**: John Zavala's MSHA Discrimination Report, dated 04/13/20 (TLCC 000098)

**Exhibit C-9**: John Zavala's EEOC Charge of Discrimination, dated 06/19/20 (TLCC 000130 – 133)

**Exhibit C-10**: Plaintiff, John Zavala's Answers and Objections to Texas Lehigh Cement Company, LP's First Set of Interrogatories, dated 11/29/21

**Exhibit D**: Deposition of the Plaintiff, John Zavala, Part 2, taken on 03/17/22

**Exhibit D-1**: Recording of the December 20, 2019 meeting (Zavala002828)

**Exhibit E**: Declaration of Plant Manager Natacha Lago

**Exhibit E-1**: Limited Partnership Agreement of Texas Lehigh Cement Company LP, dated 10/01/00 (LHI_00007 – 36)

**Exhibit E-2**: Amendment No. 3 to Agreement of Limited Partnership, dated 09/30/19 (LHI_00001 – 6)

**Exhibit F**: Declaration of John T. Runde

**Exhibit F-1**: MSHA Decision Letter, dated 06/12/20 (Zavala002107 – 2108)

**Exhibit F-2**: EEOC's Notice of Right to Sue, dated 09/29/20

**Exhibit G**: Second Declaration of Plant Manager Natacha Lago

**Exhibit H:** Third Declaration of Plant Manager Natacha Lago

**Exhibit I:**     Second Declaration of John T. Runde

**Exhibit I-1:**   Plaintiff's Employment Application for Alfaro Industrial Services, bates numbered ALFARO_000001 – 000002

**Exhibit I-2:**   Defendants, Texas Lehigh and Eagle Materials' Subpoena of Alfaro's Industrial Services, LLC, dated 02/07/22 and personally served on 02/22/22

**Exhibit I-3**:   Plaintiff's Initial Disclosures, dated 04/08/21

### III.   FACTUAL BACKGROUND

3.  John Zavala joined Texas Lehigh in June of 2012 and rose through the ranks to the role of Utility Supervisor in 2016. **Ex. A**, ¶¶ 13 & 21. As the Utility Supervisor, Zavala was responsible for the safety of the 14-to-22-person[1] Utility Crew. **Ex. C**, 89:12–90:8. The person holding that position is required to enter the confined spaces around the plant that the Utility Crew must periodically work in and maintain. **Ex. B**, 74:10–76:22, 83:23–84:9; **Ex. C-1** (Zavala000095-96[2]). The Utility Supervisor is also required to maintain contact with his subordinates for purposes of assuring safe work practices. **Ex. C**, 135:21–136:9; **Ex. B**, 50:18–51:10, 78:20–79:9. There is

---

[1] The size of the Utility Crew varied over time and included both temporary contract workers and full-time employees. **Ex. C**, 89:1–20.

[2] From the Patient Notes from one of Zavala's post-accident medical providers: "Mr. Zavala describes to me that at least for two weeks out of the year the cement plant is shut down for extensive inspection and maintenance for two weeks straight. He states that, during these times, every available employee is required to be at the plant, inspecting the plant for appropriate function. ***When doing so, he has to crawl inside the kilns to inspect the inside of the kilns for cracks. He also climbs the pre-heat towers which have several levels of scaffold in order to inspect and maintain the pre-heating towers of the cement plant as well***." **Ex. C-1** (Zavala 000095-96). Zavala claims that this is the only time in which he may be called upon to perform "confined space entry," but this is belied by the fact that his crew had to address unexpected malfunctions, some of which involved such spaces. *See* **Ex. B**, 75:20–76:22 ("way more than once a year.").

no question but that the Utility Crew had to enter "confined spaces" for different reasons. **Ex. B**, 75:22–76:22, 78:20–79:9; **Ex. C-1** (Zavala000095-96).

4. In December of 2017, Zavala was in an off-duty motorcycle accident. He lost his left leg below the knee as a result of the accident. **Ex. A**, ¶¶ 25 & 26. Between December of 2017 and December 23, 2019, Texas Lehigh paid Zavala 100% of his salary during multiple 6-month leaves of absence as well as other, shorter leaves of absence. **Ex. C-10**, Answer to Interrog. No. 3. During this timeframe, and after his amputation, Zavala actually performed "confined space entry" using his prosthetic leg. **Ex. B**, 35:12–15. Zavala worked a total of about a month and a half in 2018 and fewer than 6 months in 2019. **Ex. C-10**, Answer to Interrog. No. 3; **Ex. C**, 157:21–158:6. Despite that, Zavala was paid 100% of his salary during both years due to Texas Lehigh's generosity and loyalty to its employees. **Ex. B**, 59:2–16 (testimony stating that Texas Lehigh's written Short-Term Disability Policy typically only pays disabled employees 66.67% of their salaries during leaves of absences and is reserved for hourly rather than supervisory employees).

5. After two years of surgeries, rehab, and multiple long periods of leave, Zavala was finally cleared to return to work without restrictions in December of 2019. **Exs. C-4 & C-5.** During the interactive process that Texas Lehigh engaged in, Zavala even confirmed that he was willing and able to resume all of his essential duties— specifically including entering confined spaces— in an unambiguous December 13, 2019 email. **Ex. C-3**. After receiving that email, and two independent work releases from medical professionals, Texas Lehigh's management, including Plant President Neil Hodgson and Plant Manager Natacha Lago, expected him to resume all of the duties for which he had been cleared, including specifically confined entry work. **Ex.C-3**. Texas Lehigh's management was especially concerned with Zavala resuming his safety-related duties,

including the essential function of entering confined spaces and "vessels." **Ex. B**, 83:13–84:2.[3] When Neil Hodgson became Plant President while Zavala was on leave, safety became a renewed focus for all supervisors at the plant and the Utility Supervisor position was no exception. **Ex. B**, 74:13–75:17.

6.  However, in a December 20, 2019, return-to-work meeting with the plant's Production Manager and Safety Director, Zavala contradicted his December 13, 2019, email and for the first time flatly refused to enter confined spaces **Ex. D-1**, 16:01 to 17:20. Stunned[4] by Zavala's refusal, Texas Lehigh's management set another meeting with Zavala on December 23, 2019 so that the Plant President, Neil Hodgson, would have a chance to speak directly to Zavala about his refusal to perform an essential function of the Utility Supervisor position and explain to him the consequences of the refusal. **Ex. B**, 67:7-68:9; **Ex. C**, 170:15–171:1. Unbeknownst to anyone else present at the meetings, Zavala secretly recorded both the December 20 and 23, 2019 meetings on his Apple Watch—all of the December 20, 2019 meeting and roughly a third[5] of the December 23, 2019 meeting. **Ex. C**, 171:2-10, 178:13–179:3, 181:1–11; **Ex. C-6**; **Ex. D**, 271:25–272:14, **Ex. D-1**.

---

[3] Zavala may claim that because he infrequently entered confined spaces prior to his accident, that it should not be an essential function of the supervisory role. Is does not matter how he personally views this task, as he was fully cleared to undertake this specific safety-related function, but simply refused.

[4] While recuperating from his amputation Zavala mentioned at that time that his ability to move into and out of confined spaces might but "iffy." **Ex. C**, 136:11–17; **Ex. D**, 276:8–277:6; **Ex. D-1**, 5:21 to 5:48. That doubt was fully resolved after his multiple leaves of absence, recuperation, and full return to work (with a cane as needed). **Exs. C-4** & **C-5**. Entry into confined spaces was discussed with Zavala during every one of his returns from his leaves-of absence. **Ex. D-1**, 5:21 to 5:48.

[5] For reasons that are not fully clear, Zavala did not produce a recording of the first 15 minutes of the December 23, 2019 termination meeting; he only produce a recording of the last 4 minutes and 31 seconds of the meeting. **Ex. C**, 178:13–179:3. Zavala's explanation is that a phone call interrupted 15 minutes of the recording. **Ex. C** 179:4–20.

7. At the December 23, 2019 meeting, Zavala stated that—despite being cleared by two sets of medical professionals—he still refused to enter confined spaces, which he argued was a "miniscule part of my job." **Ex. C-6**, 00:57 to 01:26. With that refusal to perform a critical safety-related function of the Utility Supervisor position, Plant President Neil Hodgson was left with no choice at that point but to terminate Zavala. **Ex. B**, 67:7–68:9; **Ex. C-7**. Within months, Zavala made two separate complaints against Texas Lehigh with two federal agencies. First, he complained to MSHA in April of 2020 that he was fired "because he would not perform [an] unsafe act." **Ex. C-8**. Then, after MSHA found no violation, Zavala filed a disability discrimination complaint with the EEOC changing his allegation regarding the motivation for his termination from refusal to perform an "unsafe act" to "terminating me due to my disability." **Ex. F-1**; **Ex. C-9**. The EEOC also found no violation and issued a right-to-sue letter on September 29, 2020. **Ex. F-2**. The instant case was filed on December 23, 2020, which was *85 days* after the date of the EEOC's "right-to-sue" letter. **Ex. A**; **Ex. F-2**.

### IV. LEGAL STANDARDS

8. Summary judgment should only be granted if the evidence shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party." *Bedford Internet Office Space, LLC v. Travelers Cas. Ins. Co.*, 41 F. Supp. 3d 535, 540 (N.D. Tex. 2014).

## V.   ARGUMENT AND AUTHORITIES

**ISSUE NO. 1:** *Whether the loss of Plaintiff's left leg is an actual "Disability" under the ADA*.

9.   Defendants do not dispute that the loss of plaintiff's leg is an actual disability within the definition set forth in the ADA and case law construing it. To do so would be absurd. Defendants do, however, vigorously dispute that Plaintiff's disability prevented him from performing an essential function of the Utility Supervisor position: entering confined spaces to properly monitor his employees' safety. **Ex. B**, 74:13–75:19; **Ex. C-1** (Zavala 000095-96); **Ex. C-2**. Defendants assert that his outright refusal to perform this function when medically cleared to do so with the accommodation allowed by Texas Lehigh is a non-discriminatory justification for his termination. *See* **Ex. C-3**, **Ex. C-4**, & **Ex. C-5**. Defendants oppose summary judgment on the issue of Plaintiff's disability to the extent it can be construed to affect any jury question regarding whether that disability prevented him from performing an essential function, but Defendants are willing to stipulate to the limited issue that the loss of a leg below the knee constitutes a disability as contemplated by the ADA.  Defendants have never denied that Plaintiff has a disability.

**ISSUE NO. 2:** *Whether there is a genuine issue of material fact regarding Defendants' Failure to Mitigate Defense*.

10.   Whether or not Plaintiff fully mitigated his damages by diligently seeking substantially equivalent employment following his December 23, 2019 termination is an issue to be determined by the jury.  In fact, the very testimony that Plaintiff relies upon for his claim that "Plaintiff began a diligent search for subsequent employment" in his Motion for Summary creates a fact issue within itself:

```
 8        Q.  Did you apply for any other job between
 9    January 2020 and the time you began working for Alfaro's
10    in November of 2020?
11        A.  Again, never officially put in a -- I might lie
12    on that one.  On Indeed I believe I had put a lot of
13    stuff in.  But again, I don't remember exactly if that
14    was -- counts as an application or not.
```

*See* Pltf's. MPSJ, Pg. 4 (citing Pltf's. Ex. 2, Zavala Dep. 235:8–14).

The Plaintiff cannot even state with certainty that he applied for any job during an 11-month period other than the job with Alfaro's Industrial Services, LLC that he claims he did not begin until November 2, 2020. Pltf's. MPSJ Ex. 2, Zavala Dep. 234:20–235:14. This contradictory statement wherein the Plaintiff states "never officially put in – ***I might lie on that one***. On Indeed I believe I had put a lot of stuff in. But again, I don't remember exactly if that was – counts as an application or not" is the entirety of what Plaintiff relies upon for the assertion that he diligently sought to seek subsequent employment. *See* Pltf's. MPSJ, Pg. 4. The statement alone supports the affirmative defense of failure to mitigate damages and creates a fact issue for the jury because the Plaintiff cannot state with any degree of certainty that he applied to more than one job during the 11 months following his termination, much less produce documentary evidence of it. Pltf's. Ex. 2, Zavala Dep. 234:20–235:14. That testimony in and of itself would support a jury finding of failure to mitigate and Defendants should be able to cross examine Plaintiff on the issue at trial. *See Brackeen v. Haaland*, 994 F.3d 249, 290 (5th Cir. 2021) (en banc)( "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Further, there is evidence that there were substantially equivalent job opportunities in the cement industry, and the trades that support it, during the relevant time period. *See* **Ex. H**, Declaration of Plant Manager Natacha Lago. Yet Zavala cannot testify with any degree of certainty

that he applied to more than *one* job in 11 months. Pltf's. Ex. 2, Zavala Dep. 234:20–235:14; *Scudiero v. Radio One of Tex. II, LLC*, 2015 U.S. Dist. LEXIS 133434, at *57 (S.D. Tex. 2015)("A plaintiff who abandons his search for a comparable job . . . has failed to mitigate his damages.").

11. But the mitigation issue is even deeper than Plaintiff's uncertainty and contradiction. Defendants served a subpoena on Alfaro's Industrial Services, LLC and were able to obtain Plaintiff's Employment Application. *See* **Ex. I-1**. The application is dated November 2, 2020, but in the application, the "Previous Employment" section is blank, and Plaintiff already had an "Alfaro's Scaffolding" email address indicating that he had already been given the Project Manager job and had been on-boarded with that company. *Id.* Defendants have subpoenaed Plaintiff's complete payroll records with Alfaro's Industrial Services LLC in hopes of determining whether Plaintiff worked as a 1099 independent contractor before being brought on full-time on November 2, 2020. *See* **Ex. I-1**. Despite being unable to obtain complete pay records to date[6], if necessary, Defendants intend to compel the production of those documents to find out the truth of when Plaintiff began receiving compensation from Alfaro's and how much he received in total from that subsequent employer.

12. At this point, the degree to which Plaintiff mitigated his damages is still nebulous due to Plaintiff's failure to fully respond to discovery. For example, Plaintiff cannot or will not state or otherwise disclose precisely how much he made working for Alfaro's Industrial Services. **Ex. C-10**; **Ex. C**, 202:9–203:14 (giving only rough figures regarding compensation in response to Interrogatory No. 3 that he later contradicted in deposition testimony); 199:8–201:18 (stating only "I'll have to discuss it with my lawyers" in response to a series of targeted questions regarding

---

[6] As of the date of the filing of this response, Defendants' counsel is in the process of working with counsel for Alfaro's Industrial Service, LLC to obtain complete records of the compensation he received from that employer. *See* **Ex. I-2**.

Plaintiff's damages). Plaintiff has not produced his 2020 or 2021 tax returns, which he claims not to have filed, and neither he nor Alfaro's Industrial Services have provided all of his W-2s or other payroll records, despite proper requests for the same. **Ex. C**, 203:2–204:3 (denying that he filed tax returns and responding to a question about whether he has his W-2s with "I might have [the W-2s] here. I haven't looked at the mail in a while honestly."). Further, Defendants have not received any damage calculation in Plaintiff's Initial Disclosures or any amendments thereto that set forth Plaintiff's claimed damages in any way. **Ex. I-3**. Plaintiff should not, and cannot, be rewarded for his failure to disclose the degree to which he has mitigated damages with a summary judgment striking the defense of failure to mitigate entirely. *See, e.g., Hovanec v. Miller,* No. SA-17-CV-766-XR, 2020 U.S. Dist. LEXIS 14823, at *10 (W.D. Tex. 2020)("The Court finds that Plaintiff's failure to provide damages information in her initial disclosures and her refusal to answer questions about her damages in her deposition was harmful and was not substantially justified, and her abuse of the discovery process precludes her from offering this evidence at trial."). As a result, and in addition to the fact issues on whether he made diligent efforts to obtain subsequent employment shown above, Plaintiff's motion for summary judgment on the defense of failure to mitigate must be denied.

   **ISSUE NO. 3:** *Whether there is a genuine issue of material fact regarding Defendants' Limitations Defense*.

  13. Defendants do not contest that Plaintiff filed his charge of discrimination within 180 days of his termination, on December 23, 2019, or that he filed his ADA claim within 90 days of receiving his right-to-sue letter. However, Plaintiff is time-barred from complaining about any discrete acts of alleged discrimination that he claims occurred prior to 180 days before he filed the Charge of Discrimination on June 19, 2020. This means any alleged act of discrimination prior to

Sunday, December 22, 2019, is time-barred and is not proper before this Court. *See* 42 U.S.C § 2000e-5(e)(1); *see also* Pltf's. MPSJ, Pg. 6 (conceding that 42 U.S.C § 2000e-5(e)(1) applies to his claims and that he filed his Charge of Discrimination with the EEOC on June 19, 2020). Therefore, Defendants' limitations defense applies to bar all discrete claims of discrimination that occurred prior to his termination meeting on Monday, December 23, 2019, including but not limited to, his claim that Texas Lehigh failed to accommodate a request for bathroom handrails, which he claims occurred prior to "May 18, 2019." *See* **Ex. A**, Pltfs. Orig. Pet., ¶¶ 46–47.

14.     The Supreme Court and multiple courts in the Fifth Circuit construing 42 U.S.C § 2000e-5(e)(1) have held that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 860 (S.D. Tex. 2010). "Each discrete discriminatory act starts a new clock for filing charges alleging that act . . . . [and] the charge, therefore, must be filed within the 180-day time period . . . after the discrete discriminatory act occurred." *Id.* at 861. (*citing Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("[D]iscrete actions are not entitled to the shelter of the continuing violation doctrine.")).

15.     Further, Defendants' limitations defense applies to bar *all* of Plaintiff's Texas state law claims brough under Texas Labor Code § 21.254 because Plaintiff filed suit more than **60 days** after he received his notice of right to sue. *See Hansen v. AON Risk Servs. of Tex., Inc.*, 473 F. Supp. 2d 743, 747–48 (S.D. Tex. 2007) (holding that in a discrimination case that was removed to federal court, the "plaintiff's TCHRA claim is time barred because it was filed on October 6, 2005, more than 60 days after plaintiff received notice of his right to sue . . . ."). It is undisputed that the EEOC's notice of right to sue was dated September 29, 2020. *See* **Ex. F-2**; Pltf's. MPSJ, Pg. 8. Plaintiff did not address receipt of any state agency "right to sue" letter.  Applying the

mailbox rule[7], Plaintiff constructively received the notice of right to sue on Friday, October 2, 2020, three days after the notice was issued. *See* **Ex. F-2**. Therefore, the TCHRA's 60-day window for Plaintiff to file his state law claims expired on *December 1, 2020. See Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000)(construing the TCHRA's 60-day limitations period following a notice of right to sue). Because Plaintiff did not file those TCHRA claims until *December 23, 2020*, over 60-days after his receipt of the notice of right to sue, all of his state law-based claims are time barred as a matter of law and summary judgment in Plaintiff's favor on the defense of limitations is improper.

>   **ISSUE NO. 4:** *Whether there is a genuine issue of material fact regarding Plaintiff's Exhaustion of Administrative Remedies.*

16.     This issue is closely related, if not completely duplicative of Issue No. 3, the Defendants' limitations defense. The same arguments apply to the exhaustion of administrative remedies and are incorporated into this section by reference. Specifically, while the Plaintiff may have exhausted his administrative remedies in part by filing a Charge of Discrimination within 180 days of his December 23, 2019 termination, any claims under the ADA based on alleged acts of discrimination that supposedly occurred prior to December 22, 2019 are nevertheless time barred by 42 U.S.C § 2000e-5(e)(1). *See* **Ex. C-9**; *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 860 (S.D. Tex. 2010). Therefore, summary judgment on the issue of whether Plaintiff properly exhausted all of the administrative remedies for all of his claims is improper.

---

[7] Where plaintiffs never specified when they receive right-to-sue letter from EEOC, federal courts apply the "mailbox rule" to presume that receipt occurred within three days of mailing. *Hansen v. AON Risk Servs. of Tex., Inc.*, 473 F. Supp. 2d 743, 747 (S.D. Tex. 2007); *Williams v. Stake*, 75 F. Supp. 3d 185, 188 (D.D.C. 2014); FED. R. CIV. P. 6(e).

## VI. PRAYER

Based upon the foregoing, Defendants, Texas Lehigh Cement Company, LP and Eagle Materials, Inc. pray that this Court deny Plaintiff's Motion for Partial Summary Judgment accordingly, and grant them all other relief to which they may be entitled.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By: */s/ John T. Runde*
Sherrard (Butch) Hayes
State Bar No. 00784232
shayes@wshllp.com
John T. Runde
State Bar No. 24093084
jrunde@wshllp.com

**ATTORNEYS FOR DEFENDANTS**
**TEXAS LEHIGH CEMENT COMPANY, LP**
**AND EAGLE MATERIALS, INC.**

# **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐    U.S. Mail, First Class
☐    Certified Mail
☐    Facsimile
☐    Federal Express
☐    Hand Delivery
☒    E-Mail
☐    E-Service

on this the 14th day of April 2022, to wit:

| | |
|---|---|
| Austin Kaplan<br>Matthew "Maff" Caponi<br>Ryan O. Estes<br>KAPLAN LAW FIRM, PLLC<br>406 Sterzing Street, Suite 202<br>Austin, Texas 78704<br>512.553.9390<br>512.692.2788 fax<br>akaplan@kaplanlawatx.com<br>mcaponi@kaplanlawatx.com<br>restes@kaplanlawatx.com<br><br>**ATTORNEYS FOR PLAINTIFF JOHN ZAVALA** | Mark S. Scudder<br>James H. Birch<br>Eric Carlson<br>QUILLING, SELANDER, LOWNDS,<br>WINSLETT & MOSER, P.C.<br>2001 Bryan St., Ste. 1800<br>Dallas, Texas 75201<br>214.871.2100<br>214.871.2111 fax<br>mscudder@qslwm.com<br>jbirch@qslwm.com<br>ecarlson@qslwm.com<br><br>**ATTORNEYS FOR DEFENDANT LEHIGH HANSON, INC.** |

                                            */s/ John T. Runde*
                                            John T. Runde