UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN ZAVALA, | § | No. 1:21-CV-00082-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| TEXAS LEHIGH CEMENT | § | |
| COMPANY, LP, LEHIGH | § | |
| HANSON, INC., AND EAGLE | § | |
| MATERIALS, INC. | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING DEFENDANT LEHIGH HANSON'S MOTION FOR
SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART
PLAINTIFF JOHN ZAVALA'S MOTION FOR SUMMARY JUDGMENT, AND
DENYING DEFENDANTS LEHIGH CEMENT AND EAGLE MATERIALS'S
MOTION FOR SUMMARY JUDGMENT

Before the Court are three Motions for Summary Judgment.  The first

is Defendant Lehigh Hanson, Inc.'s ("Lehigh Hanson")[1] Motion for Summary

Judgment filed on March 31, 2022.  (Dkt. # 18.)  Plaintiff John Zavala ("Zavala")

responded in opposition on April 14, 2022.  (Dkt. # 27.)  Lehigh Hanson replied on

April 21, 2022.  (Dkt. # 28.)

Next is Zavala's Motion for Partial Summary Judgment against

---

[1] The Court will use each Defendant's name when referring to them individually,
but when referring to all three at the same time (Lehigh Hanson, Lehigh Cement,
and Eagle Materials), the Court will use the term "Defendants" for brevity.

Defendant Lehigh Cement Company, LP ("Lehigh Cement") filed on March 31, 2022. (Dkt. # 20). Lehigh Cement and Defendant Eagle Materials, Inc. ("Eagle Materials") responded in opposition on April 14, 2022. (Dkt. # 24.) Lehigh Hanson filed a Notice of Joinder in Lehigh Cement and Eagle Material's Response to Zavala's Partial Motion for Summary Judgment on April 14, 2022. (Dkt. # 25.) Zavala replied on April 21, 2022. (Dkt. #29.)

Finally, Lehigh Cement and Eagle Materials filed a Motion for Summary Judgment on March 31, 2022. (Dkt. # 21.) Zavala responded in opposition on April 14, 2022. (Dkt. # 26.) Lehigh Cement and Eagle Materials replied on April 22, 2022. (Dkt. # 31.)

After careful consideration of the memoranda filed in support of and against the motion, the Court **DENIES** Lehigh Hanson's Motion for Summary Judgment, **GRANTS IN PART** and **DENIES IN PART** Zavala's Partial Motion for Summary Judgment, and **DENIES** Lehigh Cement and Eagle Materials's Motion for Summary Judgment for the following reasons.

<u>BACKGROUND</u>

Zavala began working for Lehigh Cement, a cement manufacturing facility, at its Buda, Texas plant in June 2012. (Dkt. # 20-2 at 4.) He started as a Utility Man, then was promoted to Utility Leadman in 2013. (Id. at 5.) As a Lead, Zavala alleges he was occasionally asked by his Utility Supervisor to crawl into a

confined space to aid with annual outages. (Dkt. # 1-1 at 4:16-18.) According to Zavala, this is an "inherently dangerous" activity, particularly for individuals with disabilities, because the difference between life and death can be measured in the number of seconds it takes to crawl out of the space if something goes wrong. (Id. at 4:18, 5:20.)

Zavala was promoted to Utility Supervisor in 2016. (Dkt. # 20-2 at 6.) Approximately one year later, on December 4, 2017, Zavala was in a serious motorcycle accident, which resulted in the loss of his leg. (Id. at 7.) While he recovered, Zavala went on short-term disability. (Dkt. # 1-1 at 5:25-26.) Zavala alleges that in May 2018, Lehigh Cement informed him that his short-term disability would expire if he did not return to work before six months elapsed. (Id. at 5:30, 6:32.) Though he still had a broken femur, Zavala obtained a work release from his doctor permitting his return so long as he wore a knee brace and took breaks. (Id. at 6:33.)

On June 12, 2018, Zavala underwent femur surgery and remained out of work for six months. (Id. at 7.) He was cleared to return to work on or around December 10, 2018, and was able to perform all his core supervisor duties. (Id.) Zavala worked without problem until May 2019, when he had an unexpected gallbladder surgery. He returned to work on June 7, 2019, with a 15-pound lifting restriction. (Id. at 7-8.) Zavala then left on June 27, 2019, for a preplanned ACL

surgery resulting from his motorcycle accident. (Dkt. # 1-1 at 8.) He was again out of work for roughly six months, but was cleared to return in December 2019 with some restrictions, including use of a cane as needed. (Id.)

Zavala alleges that in December 2019, Lehigh Cement informed him that he needed a full release, without any restrictions, in order to return to work. (Id.) He also contends Lehigh Cement told him that, as a Supervisor, he needed to personally crawl into a confined space. (Id. at 8.) Zavala claims he felt unsafe performing this task with his prosthetic leg and pointed to the fact that Leads historically took on this task for Supervisors, not the other way around. (Id. at 9.) Zavala and Lehigh Cement continued to dispute the issue throughout December 2019. (Id.)

Finally, on December 23, 2019, Zavala attended a meeting with his managers and the president of Lehigh Cement. (Id.) Zavala alleges Lehigh Cement informed him that he was being terminated because of his "refusal to accept [his] job duties," meaning the task of climbing into the confined space. (Id. at 10:74.) Zavala also asserts that Lehigh Cement acknowledged that the company's refusal to accommodate his injury and injury-based limitations were the reason for his termination. (Id.)

Zavala filed a charge of discrimination with the EEOC on June 19, 2020. (Dkt. # 20-4.) He then brought suit against Lehigh Cement, Lehigh Hanson,

and Eagle Materials in Hays County, Texas state court on December 23, 2020.
(Dkt. # 1-A.)  His complaint alleged disability discrimination, failure to
accommodate, and retaliation under the Americans with Disabilities Act, as
amended (the "ADAAA") and the Texas Commission on Human Rights Act,
Texas Labor Code § 21.001 *et seq*. (the "TCHRA").  (Id.)  Lehigh Cement and
Eagle Materials removed the case to the U.S. District Court for the Western
District of Texas on January 27, 2021.  (Dkt. # 1.)

## LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute
as to any material fact and the movant is entitled to judgment as a matter of law.'"
Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted);
see also Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists when the
'evidence is such that a reasonable jury could return a verdict for the nonmoving
party.'"  Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir.
2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).  "The
moving party 'bears the initial responsibility of informing the district court of the
basis for its motion, and identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact.'"  Nola Spice Designs,
LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit." Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" McCarty v.

Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v.

Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary

judgment motion, the court draws all reasonable inferences in the light most

favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC,

915 F.3d 987, 992 (5th Cir. 2019).

Additionally, at the summary judgment stage, evidence need not be

authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P.

56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir.

2017).  However, "[u]nsubstantiated assertions, improbable inferences, and

unsupported speculation are not sufficient to defeat a motion for summary

judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012)

(quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

Because each Motion for Summary Judgment was brought under a

different ground, the Court will discuss the Motions separately.[2]

I.    Lehigh Hanson's Motion for Summary Judgment

---

[2] With one exception for an argument raised by Eagle Materials in its joint Motion
for Summary Judgment with Lehigh Cement.  (Dkt. # 21.)  In the Motion, they
allege that Eagle Materials is not a general partner of Texas Lehigh Cement.  (Id. at
4:5.)  Because the Court's legal analysis of this issue is the same as is required to
address Lehigh Hanson's Motion, the Court will evaluate Eagle Materials's claim
alongside the discussion of Lehigh Hanson's Motion in Section I.

Lehigh Hanson argues that it is neither a general nor a limited partner of The Texas Lehigh Cement Company ("TLCC"), and that there is no genuine dispute of material fact as to this allegation.  (Dkt. # 18; Dkt. # 28.)  Lehigh Hanson also contends that, because it is not a partner to TLCC, there is no basis to hold it accountable for actions taken by Lehigh Cement; therefore, summary judgment should be granted as to all claims asserted against it.  (Id.)  Zavala responds that the evidence shows there is, at minimum, a fact issue regarding Lehigh Hanson's partnership status, thus making summary judgment improper.  (Dkt. # 27.)

The Court finds summary judgment inappropriate given the number of fact issues in need of resolution.  First is what, if any, relationship exists between Lehigh Hanson and Lehigh Hanson Cement South, LLC ("Hanson South").  If no relationship exists, a second issue arises as to whether Lehigh Hanson's business relationship with Lehigh Cement constitutes a general partnership under the Texas Business Organizations Code. [3]

TLCC was formed when Lehigh Cement and Texas Cement executed a limited partnership agreement ("Partnership Agreement") on September 29, 2000.  (Dkt. # 19-1 at 18.)  The Partnership Agreement was amended on September 30, 2019, to add Hanson South as a limited partner to TLCC.  (Id. at

---

[3] The Texas Business Organizations Code governs this dispute because the partnership at issue was created under Texas state law.  (Dkt. # 19-1 at 18.)

45.)  According to the Agreement, Hanson South holds 49.9% of partnership

interest as a limited partner, but also holds 0.1% as a general partner.  (Id.)

Lehigh Hanson contends that the Partnership Agreement establishes it

is not a partner because its name is not listed anywhere in the Agreement.  (Dkt. #

18; Dkt. # 28.)  However, it is unclear whether Lehigh Hanson and Hanson South

are the same, or at least an affiliated, entity.  The Agreement states that a copy of

any notices should be sent to Hanson South and a copy to "Lehigh Hanson, Inc.",

with the same address listed for both companies.  (Dkt. # 19-1 at 47.)  The

corporate officer who executed the Partnership Agreement on Hanson South's

behalf, Carol Lowry, appears to hold the same position at Lehigh Hanson.  (Dkt.

# 19-1 at 50.)

A reasonable jury could find that Hanson South and Lehigh Hanson

are the same, or are at least affiliated, entities.  See Patin v. Thoroughbred Power

Boats, Inc., 294 F.3d 640, 650 (5th Cir. 2002) (finding that overlapping ownership,

officers, and addresses supported the conclusion that a company was a "mere

continuation" of its predecessor); see also S. Capitol Enter., Inc. v. Conseco Serv.,

LLC, 476 F.Supp.2d 589, 595 (M.D. La. 2007) ("[u]ltimately, determining whether

an affiliated group of entities constitutes a single business enterprise [for the

purpose of liability] is a question of fact…").

If the jury so finds, the Partnership Agreement suggests that Lehigh Hanson does bear some (0.1%) general partnership interest in TLCC.  (Id.)[4]  A person who is both a general partner and a limited partner "is subject to the restrictions and liabilities of a general partner; and . . .is subject to the restrictions and liabilities, if any, of a limited partner to the extent of the general partner's participation in the partnership as a limited partner."  TEX. BUS. ORG. CODE § 153.153(1)-(2).  A jury should determine whether and to what extent Lehigh Hanson participated in the partnership as a general or limited partner.  See Lee v. BMCY, Inc., 2002 WL 31045979, at *3 (holding that, given the number of fact issues arising out of the partnership agreement, interpretation of the agreement was a question for the jury).

Moreover, even if Lehigh Hanson is found to be a separate, unrelated entity from Hanson South, there remains a fact issue as to whether Lehigh Hanson's business relationship with Lehigh Cement constitutes a general partnership.  Under the Texas Business Organizations Code, a general partnership is "an association of two or more persons to carry on a business for profit as owners. . .regardless of whether the persons intend to create a partnership."  TEX.

---

[4] While some states do not permit concurrent general and limited partnership interests, Texas does. See TEX. BUS. ORG. CODE § 153.151(c) ("[a] written partnership agreement may provide that a person may be admitted as a general partner in a limited partnership. . .and may acquire a partnership in the limited partnership.").

BUS. ORG. CODE § 152.051(b).  To determine whether a general partnership exists,

courts look to factors such as shared profits, expressions of intent to be partners,

participation in control of the business, and agreements to share losses, liabilities,

and contribute money or property to the business.  Id. at § 152.052.  The general

partnership is liable for the conduct of a partner acting in the ordinary course of

business of the partnership.  Id. at § 152.303(a)(1).

Given that the evidence suggests, at the very least, a business

relationship between Lehigh Hanson and Lehigh Cement, a jury should be given

the opportunity to make the fact determination as to whether these activities

constitute a general partnership, and if so, whether the acts were taken in the

ordinary course of the partnership's business.  Therefore, Lehigh Hanson's motion

is denied.

### a.  Eagle Materials's Partnership Liability

Eagle Materials similarly asserts that it is entitled to summary

judgment because it is not the general partner of Texas Lehigh and it did not hire,

fire, or employ Zavala.  (Dkt. # 21 at 4:5.)  In support of its argument, Eagle

Materials proffers the same Partnership Agreement and amendment as Lehigh

Hanson.  (Id. at 9.)

Unlike Lehigh Hanson, the Eagle Materials name does not even

disputably appear anywhere on the Partnership Agreement or amendment.  (Dkt.

# 21-18, Exh. E-1, 2.)  However, like Lehigh Hanson, there is "more than a scintilla" of evidence in the record to suggest that Eagle Materials participates in business activities with Lehigh Cement that could rise to the level of a general partnership under TEX. BUS. ORG. CODE § 152.052.  Boudreaux, 402 F.3d at 540. Whether activities such as supplying health benefits, determining the equipment to be purchased, and providing corporate approval constitute a general partnership is a question for the jury.  (See Dkt. # 26 at 20.)  Therefore, Eagle Material's Motion for Summary Judgment as to its liability on a partnership theory is denied.

## II.    Zavala's Motion for Partial Summary Judgment

Zavala moves for partial summary judgment as to the issues of (1) whether he has an actual disability under the ADAAA and (2) Lehigh Cement's affirmative defenses of failure to mitigate damages and statute of limitations.[5] (Dkt. # 20.)  Lehigh Cement and Eagle Materials, joined by Lehigh Hanson (Dkt. # 25), assert that they do not contest that Zavala's loss of leg constitutes a disability, mooting the issue, and that Zavala is not entitled to summary judgment as to their affirmative defenses.  (Dkt. # 24.)  Zavala maintains that there is no genuine issue of material fact as to the issues of mitigation and statute of limitations.  (Dkt. # 29.)

---

[5] Defendants brought both affirmative defenses pursuant to Rule 94 of the Texas Rules of Civil Procedure.  (Dkt. # 20-7 at 2.)  Since this case has now been removed to federal court, the Court will consider the defenses under Federal Rule of Civil Procedure 8(c).

a. <u>ADAAA Disability</u>

Though the parties agree that the loss of Zavala's left leg constitutes a disability under the ADAAA, there remains a dispute as to whether summary judgment on the issue is warranted, or whether it is simply moot. (Dkt. # 24; Dkt. # 29.) Defendants oppose summary judgment to the extent it can be construed to affect any jury question regarding whether that disability prevented him from performing an essential function, but are otherwise willing to stipulate to the limited issue that loss of a leg below the knee constitutes a disability under the ADAAA. (Dkt. # 24 at 8.)

Given that the parties are in agreement, the Court grants summary judgment as to the narrow issue of whether Zavala's leg injury is a disability as contemplated by the ADAAA.

b. <u>Failure to Mitigate Damages</u>

Zavala next contends that Defendants have failed to plead and prove their affirmative defense regarding Zavala's failure to mitigate damages. (Dkt. # 20 at 6.) Defendants argue that whether Zavala fully mitigated damages by diligently seeking substantially equivalent employment after his termination is an issue for the jury. (Dkt. # 24 at 8.)

"A plaintiff suing for back pay under the ADA has a duty to mitigate [his] damages by using reasonable diligence to obtain substantially equivalent

employment." <u>Miles-Hickman v. David Powers Homes, Inc.</u>, 613 F.Supp.2d 872, 887 (S.D. Tex. 2009). "Whether an injured person has mitigated his damages requires a factual assessment of the reasonableness of his conduct." <u>Hill v. City of Pontotoc</u>, 993 F.2d 422, 427 (5th Cir. 1993). But an employer must show "not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and for which [he] was qualified." <u>Miles-Hickman</u>, 613 F.Supp.2d at 887.

Zavala asserts that he performed a diligent search for subsequent employment, filled out an account on Indeed, and engaged in personal networking. (Dkt. # 20 at 8; <u>id.</u> at Exh. 2, 234:20-25, 235:1-14.) But in his deposition, Zavala stated that he "never officially put in" any applications and that he "might lie on that one." (<u>Id.</u> at 235:11-14.) These conflicting statements create a credibility issue for the jury. Further, based on this evidence, a reasonable jury could find that Zavala failed to exercise reasonable diligence. <u>See</u> <u>Sellers v. Delgado Coll.</u>, 902 F.2d 1189, 1196 (5th Cir. 1990) (finding that submitting less than two applications per month constituted failure to exercise reasonable diligence).

To overcome summary judgment, Defendants must also show there is no genuine dispute of material fact regarding whether there was substantially equal

employment available to Zavala.[6]  See Sparks v. Griffin, 460 F.2d 433 (5th Cir.

1972).  "Substantially equal employment is employment that affords virtually

identical promotional opportunities, compensation, job responsibilities, working

conditions, and status [as the original position]."  Floca v. Homecare Health Serv.,

845 F.2d 108, 111 (5th Cir. 1988) (quoting Sellers, 902 F.2d at 1136-38).  The

Fifth Circuit has held that employment must have been available in the employee's

specific line of work in the same type of role.  Id. (discussing how, in Ballard v. El

Dorado Tire Co., 512 F.2d 901 (5th Cir. 1975), an employer had to show that

managerial work was available to a plaintiff who worked in a managerial capacity

for the defendant).

Defendants proffer the testimony of Natacha Lago ("Lago"), Plant

Manager at Lehigh Cement, as evidence that Zavala could have pursued equivalent

work opportunities.  (Dkt. #24-3, Exh. 7:3) ("I have firsthand knowledge of such

[job] openings through my regular contact with the management of the

---

[6] More recent Fifth Circuit decisions state that if an employer proves the employee
has not exercised reasonable diligence in seeking out new employment, it need not
show the availability of substantially equivalent employment.  See Sellers, 902
F.2d at 1193; Jackson v. Host Int'l, 426 F.App'x 215, 222 (5th Cir. 2011); West v.
Nabors Drilling USA, 330 F.3d 379, 393 (5th Cir. 2003).  The District Courts
similarly take different approaches, but most have held that Sparks controls, citing
the Fifth Circuit's principle that one panel cannot overrule the decision of another
panel absent an en banc decision.  See Garcia v. Harris Cty., 2019 WL 13282, at
*2; Buckingham v. Booz Allen Hamilton, 64 F.Supp. 3d 981, 986 (S.D. Tex.
2014).; Miniex v. Houston Hous. Authority, 400 F.Supp.3d 620 (S.D. Tex. 2019).
This Court will similarly apply the Sparks rule requiring a defendant to prove both
elements in order to assert the failure to mitigate damages defense.

contractors.") Lago stated that several of the vendors who regularly contract with Lehigh Cement to provide scaffolding and other services for the company had positions available throughout the period of 2020 in which Zavala was seeking employment. (Id.) She gave no description of the roles available, the duties involved, the salary and status, or the working conditions. (Id.)

Though vague, Lago's testimony regarding equivalent positions suffices to create a factual issue for the jury. Her statements are specific enough to show that employment in the same line of work was available, cf. Buckingham, 64 F.Supp. 3d at 986 (positions fell short of the equivalent standard because there was no evidence about the duties involved or whether they even existed at the time of plaintiff's search); are more than mere forecasts about the job market, cf. Miniex, 400 F.Supp.3d at 620 (expert witness merely used Bureau of Labor statistics to opine about the types of roles an attorney graduating from a top 10 law school could seek); and fall within the appropriate time frame for employment, cf. United States v. City of Houston, 2020 WL 2516603, at *39 (finding the failure to mitigate defense could not be applied where an employment offer was made a year and a half before plaintiff left the employer).

Because Defendants provided evidence to support a factual dispute regarding Zavala's diligence in search for employment and the fact that

substantially equal employment was available, Zavala's Motion for Summary

Judgment on this issue is denied.

### c.  Statute of Limitations

Finally, Zavala argues that Defendants' affirmative defense asserting

his claims are barred by statute of limitations fails because he filed his charge of

discrimination with the EEOC and subsequent lawsuit within the required time

period.  (Dkt. # 20-4.)  Defendants respond that they do not contest Zavala filed his

suit within the proper period, but that he is time-barred from complaining about

any discrete acts of discrimination that he claims occurred prior to December 22,

2019.[7]  (Dkt. # 24 at 11-12.)  Further, Defendants allege the defense bars all of

Zavala's THCRA claims because he filed suit more than 60 days after receiving

notice of his right to sue from the EEOC.  (Id. at 12.)

Turning first to the proposition that Zavala is time-barred from

complaining about any discrete acts of discrimination, the Court finds that there is

no genuine dispute of material fact.  Zavala states in his response that he is only

seeking relief based on his termination on December 23, 2019.  (Dkt. # 29 at 7.)

To the extent he raises discrete acts of discrimination prior to December 22, 2019,

Zavala maintains it is only used as evidence of intent or habit, not as the basis for

additional claims of discrimination.  (Id.)  Since the parties appear to be in

---

[7] This date was calculated by subtracting 180 days from June 19, 2020, the day
Zavala filed his charge of discrimination with the EEOC.  (Dkt. # 24 at 11-12.)

agreement that Zavala may only state a claim based on discriminatory acts occurring after December 22, 2019, and Zavala has in fact only alleged discrimination based on his termination on December 23, 2019, summary judgment is granted as to this issue.

However, the Court finds a genuine dispute of material fact as to Zavala's TCHRA claim.  Under § 21.254, plaintiffs may bring a civil action "[w]ithin 60 days after the date a notice of the right to file a civil action is received."  § 21.254 notice has been interpreted in the Fifth Circuit to mean that "plaintiff must file the suit. . .within 60 days of receiving notice of a right to sue from the *TWC* [*Texas Workforce Commission*]."  McCollum v. Tex. Dep't of Licensing and Regulation, 321 S.W.3d 58, 63 (Tex. App. – Houston [1st Dist.] 2010) (emphasis added).  Moreover, the Fifth Circuit has previously held "in no uncertain terms that Texas and federal letters are not interchangeable."  Weber v. East Lift Truck Supply, Inc., 2021 WL 6010143, at *2; see also Vielma v. Eureka Co., 218 F.3d 458, 468 (5th Cir. 2000) ("we find no reason – statutory or otherwise – to extend the scope of the EEOC's agency relationship with the TCHRA beyond receipt and processing of initial complaints to include commencement of the sixty-day filing period for TCHRA claims by receipt of an EEOC 'right to sue' letter.").

Zavala filed his charge of discrimination with the TWC on June 19, 2020, the same day he filed a claim with the EEOC.  (Dkt. # 20-4 at 3.)  Zavala has

provided no documentation of a right to sue letter from the TWC or any follow up

regarding the status of his claim.  Therefore, whether he received a right to sue

from the TWC and, if so, the date of its issuance remains a fact issue proper for the

jury.  Therefore, summary judgment on the issue of whether Zavala's claims are

time-barred under the TCHRA is denied.

III.    Lehigh Cement and Eagle Materials's Motion for Summary
        Judgment

Lehigh Cement and Eagle Materials argue there is no genuine dispute

of material fact as to whether performing confined space entry was (1) required for

a Utility Supervisor and (2) not prohibited by any health care provider, and thus

summary judgment on every claim against them is warranted.  (Dkt. # 21.)[8]  In

response, Zavala contends there are several key facts in dispute which preclude

summary judgment.  (Dkt. # 26.)

a.    Role of Utility Supervisor

To support their claim that entering confined spaces is an essential

part of the Utility Supervisor role, Lehigh Cement and Eagle Materials offer Plant

Manager Lago's deposition testimony.  (Dkt. # 21 at 12:19.)  According to Lago,

the first item on a Supervisor's job description is to attend to the safety of his crew.

---

[8] Eagle Materials also alleges that it is not a general partner of Lehigh Cement and
thus not subject to liability for its acts.  (Dkt. # 21 at 4:5.)  The Court analyzed this
claim in Section I alongside the discussion of Lehigh Hanson's partnership status.

(Dkt. # 21-2 at 17.)  Lago noted that Zavala's refusal to go into any confined space, not only climbing into a vessel for the specific task of making a cement, was the reason for his termination.  (Id.)  Zavala acknowledged that a key part of his role was being responsible for the safety of his crew.  (Dkt. # 21-3 at 5.)  However, Zavala argues that entering confined spaces is not an "essential function" of his position and that it is not expressly listed on Lehigh Cement's job descriptions.  (Dkt. # 26.)  Thus, though the parties agree that ensuring safety is an essential function of the Utility Supervisor position, there is a genuine dispute of material fact regarding whether confined spaces are included in that role.

The position description provided by Lehigh Cement offers no insight as to the specific requirement of entering confined spaces.  (Dkt. # 21-5 at 2-4.)  It lists being responsible for the safety of the crew, maintaining appearance and safety of the plant site, and percentages of crouching, kneeling, and other physical demands.  (Id.)  Of the three job descriptions, only one even mentions confined spaces.[9]  (See id. at 4.)  However, given that there are no dates or other identifying marks on these descriptions, it is not clear when they were posted, where they were made available, and which one was in force at the time Zavala was hired and promoted to Utility Supervisor.  Additionally, two are marked "Foreman" while only one uses the "Supervisor" term.

---

[9] Zavala notes that the first two job descriptions are internal, whereas the one mentioning confined spaces is an external description.  (Dkt. # 26 at 12.)

Even if a task is not an express part of the job description, it can still be considered an essential function of a position under the ADA if it bears "more than a marginal relationship" to the employee's job.  E.E.O.C. v. LHC Group, Inc., 773 F.3d 688 (5th Cir. 2014) (quoting Chandler v. City of Dall., F.3d 1385, 1393 (5th Cir. 1993)).  Fact-finders must determine whether a function is "essential" on a case-by-case basis.  Id.; see also Credeur v. La. Through Office of Attorne Gen., 860 F.3d 785, 792 (5th Cir. 2017).

The ADA also provides guidance on how to determine if a function is "essential."  42 U.S.C. § 12111(8) states that consideration shall be given to the employer's judgment as well as any written description before advertising or interviewing applicants for the job.  However, courts should not "give blind deference to an employer's judgment" and should "instead evaluate the employer's words alongside its policies and practices."  See Credeur, 860 F.3d at 794.  Courts may additionally use the EEOC's seven non-exhaustive factors, which include the employer's judgment, the written job description, the amount of time spent on the function in the job, the consequences of not requiring the incumbent to perform the function, terms of a collective bargaining agreement, work experience of past incumbents on the job, and/or current work experience of incumbents in similar jobs.  Id. at 792 (quoting 29 C.F.R. § 1630.2(n)(3)).

Lehigh Cement argues entering confined spaces was undoubtedly an essential function because entering the vessels for safety checks was routine, even by Zavala's own admission.  (Dkt. # 31 at 5.)  Zavala alleges that crawling into vessels during an outage was a "miniscule" part of his job because the outages occurred only approximately four weeks over the course of a year.  (Dkt. # 26 at 13.)  He also contends that he returned to work during one of the outages in May 2018 and did not enter the vessels, but still performed his job adequately.  (Id.) Lehigh Cement points to Lago's testimony that there are far more instances that require confined space entry than the scheduled outages.  (Dkt. # 21-2 at 18.)

Taking all reasonable inferences in favor of Zavala, there is a genuine dispute of material fact as to whether crawling in confined spaces was an essential function of his role.  Some of the EEOC and ADA factors tilt in favor of Lehigh Cement; in particular, their judgment that confined space entry is an essential function of the position and the seemingly significant safety consequences if Zavala were not required to perform the task.  However, other factors cut toward Zavala, including the ambiguity of the written job descriptions, the factual dispute as to the amount of time spent on confined space entry in the role, the factual dispute as to whether confined space entry was required of previous Utility Supervisors, and the factual dispute as to whether the safety consequences would be significant if someone other than Zavala performed the task.  Though a close

call, viewing the evidence in the light most favorable to Zavala shows a fact issue

proper for the jury.

b. <u>Zavala's Abilities and Health Provider Clearance</u>

To make out a claim for disability discrimination for failure to

accommodate, a plaintiff must show that (1) plaintiff is a 'qualified individual with

a disability;' (2) the disability and its consequential limitations were 'known' by

the employer; and (3) the employer failed to make 'reasonable accommodations'

for such known limitations. <u>Amedee v. Shell Chem., LP</u>, 953 F.3d 831 (5th Cir.

2020) (quoting <u>Feist v. La., Dep't of Justice, Office of Attorney Gen.</u>, 730 F.3d

450, 452 (5th Cir. 2013)).

From the briefings, it appears there is no dispute as to whether the loss

of Zavala's leg constitutes a disability or whether the disability was known to

Defendants.  Rather, Lehigh Cement and Eagle Materials argue Zavala was

physically capable of performing confined space entry and his flat refusal to do this

work is not conduct protected by the ADA.  Thus, though neither party framed

their arguments in the express terms of the failure to accommodate claim, the

Court interprets the issue to be whether Zavala is a "qualified individual" with a

disability.  Therefore, the Court will consider whether there is a genuine dispute of

material fact as to whether Zavala was a qualified individual with a disability.

"A qualified individual with a disability means an 'individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires.'" Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir. 1996) (quoting 42 U.S.C. § 12112(8)).  To avoid summary judgment on whether he is a qualified individual, Zavala must show (1) that he could perform the essential functions of the job despite his disability or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job.  Id. at 1093. If a job function is "essential," a reasonable accommodation does not require the employer to excuse the employee from performing that function altogether.  See Barber v. Nabors Drilling, USA, Inc., 130 F.3d 702, 709 (5th Cir. 1997).

Lehigh Cement and Eagle Materials point to three key pieces of evidence to support their argument that Zavala was not a qualified individual: (1) that Zavala previously performed confined space work with his prosthetic leg; (2) his medical release to work fully, submitted by two sets of healthcare providers, and (3) that he had agreed to perform confined space work just prior to his return to work meeting, and provided no data or justification for his sudden decision not to perform confined space entry.  (Dkt. # 21 at 11-12.)  Lehigh Cement and Eagle

Materials also note that the only specifically requested accommodation, the use of a cane as needed, was approved by Lehigh Cement management.  (Id.)

However, all the evidence provided by Lehigh Cement and Eagle Materials appears to be directly related to Zavala's ability to perform confined space entry.  Since, as discussed above, whether confined space entry is an essential function of the Supervisor position is a question for the jury, the assessment of whether Zavala was a qualified individual necessarily overlaps. Therefore, there is also a genuine dispute of material fact as to Zavala's ability to perform the essential functions of his role.

Based on the foregoing discussion, Lehigh Cement and Eagle Materials's Motion for Summary Judgment is denied.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Lehigh Hanson's Motion for Summary Judgment (Dkt. # 18), **GRANTS IN PART** and **DENIES IN PART** Zavala's Partial Motion for Summary Judgment (Dkt. # 20), and **DENIES** Lehigh Cement and Eagle Materials's Motion for Summary Judgment. (Dkt. # 21.)

25

**IT IS SO ORDERED**.

**DATE:** Austin, Texas, October 12, 2022

 

_____

David Alan Ezra
Senior United States District Judge